J.E. Wiederholt
Aglietti, Offret & Woofter, LLC
1016 W. 6th Avenue, Suite 201
Anchorage, Alaska 99501
Ofc: (907) 279-8657
Fax: (907) 279-5534
Email: jackw@aowaklaw.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JORDAN BOSTON and DONNA BOSTON, | ) ) |
| Plaintiffs, | ) |
| vs. | ) ) |
| SHAWN NORMAN, JASON SOMERVILLE, ALASKA STATE TROOPERS, JOHN DOES 1-10, Inclusive, and CROSS ROAD HEALTH, MINISTRIES INC., | ) **Case No.: 3:21-cv-00276-SLG** ) ) ) ) |
| Defendants. | ) ) |

## MOTION AND MEMORANDUM IN SUPPORT OF
## PLAINTIFFS' MOTION TO COMPEL PRODUCTION

Plaintiffs Donna Boston ("Donna") and Jordan Boston ("Jordan") (collectively "the Bostons") through their attorneys of record J.E. Wiederholt of Aglietti, Offret & Woofter, LLC, hereby submit *Plaintiffs' Motion to Compel Production of Documents* seeking orders compelling defendants, Shawn Norman and Jason Somerville, and the Alaska State Troopers ( jointly "AST") to produce documents and things sought within the Bostons' production requests 4, 5, 6, 9, and 16, as set forth below.

**The Rule:** Federal Rule of Civil Procedure 34 ("Rule 34") governs requests for the production of documents.[1] A party may request documents "in the responding party's possession, custody, or control."[2] The responding party must respond in writing and is obligated to produce all specified relevant and nonprivileged documents, tangible things, or electronically stored information in its "possession, custody, or control" on the date specified.[3] Alternatively, a party may state an objection to a request, including the reasons.[4]

Pursuant to Local Civil Rule 37.1, the undersigned conferred in good faith with AST's counsel in an effort to obtain the requested materials without court action. Nevertheless, AST has refused to make the requested disclosures.

Pursuant to Fed. R. Civ. P 37(a)(5), the Bostons further request an order compelling AST to reimburse them for at least a material portion of the attorney fees incurred in bringing this motion. AST's refusal to disclose and produce the requested production materials is not substantially justified under the circumstances as discussed more thoroughly below.

### Procedural Foundation

This is a civil rights action arising from facts, law, and circumstances previously presented to this court within the Bostons' opposition to Cross Road Health Ministries, Inc. ("CRHM") Rule 12(b)(6) motion to dismiss. Briefly, this case concerns the unjustified, egregious, and unlawful actions of defendants Norman, Somerville, AST, John Does 1-10, and Cross Road Health Ministries, Inc. ("CRHM"). Defendants Norman and Somerville, acting under color of law and in concert with others, confronted, unlawfully arrested, assaulted, battered, drugged, kidnapped, and confined Jordan against his will and freedom

---

[1] Fed. R. Civ. P. 34.

[2] Fed. R. Civ. P. 34(a)(1).

[3] Fed. R. Civ. P. 34(a).

[4] Fed. R. Civ. P. 34(b)(2)(A)-(B); *Astafan v. BRK Hosp., Inc.*, No. EDCV 21-240-JWH (KKx), 2022 U.S. Dist. LEXIS 111057, at *28-29 (C.D. Cal. Apr. 1, 2022)

and in violation of state law and state and federal Constitutional law.[5] Thereafter, defendants AST and Norman further violated Jordan's civil rights by actively facilitating and participating as witnesses within Jordan's criminal prosecution which was dismissed for lack of lawful probable cause.[6]

The same facts show that Jordan's unlawful arrest occurred under the direction of Norman and Somerville in the direct presence of Jordan's mother, Donna. These defendants violated Jordan's civil rights, personal liberties, and freedom from governmentally sponsored abusive, illegal, and unreasonable seizure—committing federal and state constitutional violations and numerous state-law torts in the process. The present motion focuses upon AST's unjustified failure and direct refusal to comply with discovery requests seeking discoverable materials and information relevant to the Bostons' claims and the precipitating actions of Norman, Somerville and AST.[7]

## FACTUAL BACKGROUND

On September 1, 2019 and out of concern for his "emotional state", Donna brought Jordan to CRMC's Glenallen.[8] Allegedly concerned that Jordan might be experiencing a "psychotic episode", a CRMC employee called Trooper dispatch requesting an officer's "precautionary presence" and for which Norman was dispatched.[9] Before Norman

---

[5] The factual assertions herein were previously presented to and considered by Alaska Superior Court Judge Rachel Aherns in *State of Alaska v. Jordan Boston,* Case No. 3GL-19-00091CR and by this court within the United States of America's [Cross Road Health Ministries, Inc.] Rule 12(b)(6) motion. [For ease of reference, hereinafter CRMC].

[6] Exhibit 1.

[7] The presently unknown John Doe defendants and any consequent liability they may face remains to be addressed through discovery.

[8] *See* Order Regarding The United States' Motion To Dismiss, Case 3:21-cv-00276-SLG Document 46 Filed 11/04/22. [hereinafter "Order: Motion To Dismiss"]

[9] *Id. See also* Exhibit 1; Order re: Motion to Suppress Evidence at p. 1; [hereinafter "Order Suppressing Evidence"] Case No. 3GL-19-00091 CR.

Plaintiffs' Motion to Compel Production
Boston et. al v. Norman et. al.
3:21-cv-00276-SLG
Page 3 of 25

arrived,[10] however, Jordan had refused the clinic's treatment and left the building without harm, threat, or damage to persons or property.[11]

Upon his arrival, Norman saw only Jordan in the clinic parking lot,[12] had no reports of any misconduct, and had no knowledge of any crime.[13] Nevertheless, when Jordan tried to leave, Norman chased, restrained, and tossed Jordan against a vehicle, and then to the ground in a prone position.[14] He handcuffed Jordan's hands behind his back while sitting on him and forcing his face into the gravel parking lot.[15] While cuffed, face down, with Norman on Jordan's back, defendant Somerville and a CRMC arrived and assisted with the restraint.[16] These troopers then assented to Jordan's forced sedation based *only* upon what Norman claimed to have been Jordan's "blank stare"[17] and with no recognized purpose but to assist in the unlawful arrest. This injustice occurred when Jordan had done nothing to give rise to a lawful *Terry* stop, let alone probable cause to arrest.[18]

---

[10] *Id.*

[11] *See* Exhibit 2, Order Regarding The United States' Motion To Dismiss at p. 2; *See* Order re: Motion to Suppress Evidence at p. 17, and at p. 2.

[12] *See* Exhibit 2, at p. 2; *See* Exhibit at p. 2 fn 1.

[13] *Id. See also* Exhibit 1 at p. **1.**

[14] *See* Exhibit 2, at p. 2.

[15] *Id.*

[16] *Id.*

[17] *See* Order re: Motion to Suppress Evidence at p. 4-5. Norman claimed that the "blank stare" "could have indicated that [Jordan] was on drugs mental health episode, and there were others in the area." *Id.* at p. 2. Based on his "training and experience," Normand stated that Jordan "many have been a danger to the public because "there is a reason people run." *Id.* Judge Aherns' order noted Norman's factually inconsistent statements concerning the presence of other persons in the area; first stating that there were no others in the area, but then claiming that there were people in the area that could have been harmed by Mr. Boston. *Id.* at fn 1.

[18] In order to justify performing a *Terry* Stop, the officer(s) at the scene must be able to prove specific facts that would lead any reasonable police officer to believe that the detained individual has or was about to engage in illegal activity. For example, a *Terry* Stop may not be conducted because a suspect has a history of criminal behavior. The threat must be immediate. *Terry v. Ohio*, 392 U.S. 1, 16, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968) ("It must be recognized what whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."); *United States v. Brown*, 996 F.3d 998, 1006 (9th Cir. 2021) ("[O]nce Wining ordered Brown to stand up and turn around . . . Wining affirmatively asserted authority over Brown's movements and at that point

Plaintiffs' Motion to Compel Production
Boston et. al v. Norman et. al.
3:21-cv-00276-SLG
Page 4 of 25

Norman and Somerville, with assistance from CRHM personnel, then restrained Jordan on a gurney, injected him with additional sedatives, and had him transported to Wasilla where he was committed for mental health assessments.[19] After Jordan's commitment, AST had Jordan arrested *again.* With AST assistance, the State of Alaska initially charged Jordan with misdemeanor Assault 4[20] but later charged him with class B Felony assault on a police officer.[21] Norman then served as the State of Alaska's chief prosecution witness in Jordan's criminal hearing. AST later charged Donna with evidence tampering after state prosecutors asserted that she failed to provide the digital recording of the incident as they had requested.[22]

The Bostons' motion rests upon these actions which each occurred within the context of an entirely unlawful arrest. Individually or in concert, these acts depict racially motivated, gratuitous governmental overreach, and state-sponsored abuse of police power, where

---

Brown was seized for Fourth Amendment purposes.") (cleaned up); *United States v. Smith*, 594 F.3d 530, 539 (6th Cir. 2010) ("Once Officer Putnick asked Smith to stop, a reasonable person would not have felt free to leave and the interaction turned into a Terry stop.").

The Ninth Circuit has "identified several factors to consider in determining if a person was seized, any one of which, if present, could constitute a seizure: (1) the number of officers; (2) whether weapons were displayed; (3) whether the encounter occurred in a public or non-public setting; (4) whether the officer's tone or manner was authoritative, so as to imply that compliance would be compelled; and (5) whether the officers informed the person of his right to terminate the encounter." *United States v. Washington*, 490 F.3d 765, 771-72 (9th Cir. 2007).

[19] *Id.* Further exemplifying the abhorrent conduct, and once the medication took effect, Norman and Somerville, with CRHM assistance, restrained Jordan on a gurney, injected him with additional sedatives, and had him transported to Wasilla, and later Anchorage, where he was committed for mental health assessments.

[20] Exhibit 2.

[21] Exhibit 3. *See* Order Regarding The United States' Motion To Dismiss at p. 3; Order re: Motion to Suppress Evidence at p. 2. Upon Jordan's return home, the State of Alaska with the assistance of AST arrested him again; for resisting arrest and misdemeanor assault based on the September 1, 2019 incident. Jordan and Donna learned of a warrant for Jordan re-arrest. Fearing further abuse from AST personnel, Jordan turned himself in at the Palmer Police Department where he was jailed pending payment of bail and compliance with various conditions of release. Jordan was charged felony and misdemeanor. The State of Alaska pressed claims against Jordan for restitution of injuries allegedly suffered by Norman during his legally baseless arrest of Jordan.

[22] Exhibit 2 at p. 3.

Plaintiffs' Motion to Compel Production
Boston et. al v. Norman et. al.
3:21-cv-00276-SLG
Page 5 of 25

Jordan did nothing to warrant the attention; a reality compounded where the defendants lacked a reasonable, articulable, suspicion of any criminal activity.

Ultimately, the trooper-sponsored charges lodged against Donna were dismissed without meaningful comment to her, Jordan, or the undersigned. The Alaska Superior Court dismissed Jordan's criminal charges given the obvious lack of probable cause. Materials fairly bearing upon this history are relevant, discoverable, and for which there is no recognized exclusionary rule within the context of this proceeding.

## PROCEDURAL BACKGROUND
### Unjustified Refusal To Provide Discovery

The Bostons seek the production of documents and materials that are within AST's possession, care, custody, and control. The production requests ("RFPs") were served on AST on or about September 26, 2022,[23] followed by a Rule 26(f) evidentiary conference on December 8, 2022. AST's responses ("AST Responses") eventually arrived on February 23, 2023.[24] Notwithstanding the mandates within Federal Rule of Civil Procedure 34, AST failed/refused to produce a single responsive document.[25] Pursuant to Local Civil Rule 37.1, an April 3, 2023, *Meet and Confer Letter* addressing AST's discovery responses[26] were sent to all counsel. All counsel conferred telephonically on April 10, 2023.

During the teleconference, AST's counsel, Andrew Trejo, recognized that AST's preceding production was deficient and that efforts were then ongoing to assure that responsive production would be provided. He expressly stated that his office would revise

---

[23] Exhibit 3; Plaintiffs' First Discovery Requests for Production Propounded to Defendants Shawn Norman, Jason Somerville, and Alaska State Troopers dated 09/26/2022.

[24] Exhibit 4. *Defendant State of Alaska's Responses to Plaintiff's First Discovery Requests for Production Propounded to Defendants Shaw Norman, Jason Somerville, and Alaska State Troopers* dated 02/23/2023.

[25] AST has produced non-responsive documents Bates stamped "000001-000050." These consist of Norman's medical records [presumably alleged to have been the result of his arrest of Jordan.] ant 11 pages of the same Incident Report, Incident Property Status Report, Proposed Charges Report, and NCIC Inquiry.

[26] Exhibit 5, Plaintiffs' Meet and Confer Letter dated 04/03/2023.

its production efforts and likely provide more materials. While promising that AST would be reviewing its earlier responses and amending the same, Mr. Trejo specifically declared that AST would not respond to production requests 4, 5, 6, 9, and 16,[27] citing AS 39.25.080[28] and AS 23.20.110.[29]  Mr. Trejo confirmed his declaration in an 10 April 2023 email;[30] counsel therein recognized that the instant *Motion to Compel* would be forthcoming.

## DISPUTED RESPONSES

AST refuses to respond to RFP Nos. 4, 5, 6, 9, and 16 citing AS 39.25.080 and AS 23.20.110.[31]  Objectively considered, AST's refusal is improper and unjustified.  In light of Mr. Trejo's April 10, 2023 email, the disputed RFPs and AST's objections thereto, are quoted below.

> **RFP NO. 4:**  "Please produce copies of any and all documents in the defendants' Alaska State Troopers, Norman, and Somerville's possession regarding defendants Norman and Somerville's employment during the past seven [7] years.  This request specifically includes all documents which have been purged from AST files."

---

[27] Exhibit 3 at pp. 5, 6, 7.

[28] See Appendix. , AS 39.25.080(a) provides that personnel records "are confidential and are not open to public inspection except as provided in this section." *See Basey v. Dep't of Pub. Safety, Div. of Alaska State Troopers, Bureau of Investigations*, 462 P.3d 529, 536 (Alaska 2020).  In *Basey* the plaintiff filed a federal civil rights lawsuit against several state troopers based on their actions during his investigation and arrest. *Basey v. Hansen*, No. 4:16-CV-00004 (D. Alaska Complaint filed Jan. 15, 2016). Basey submitted two *public records requests* to the Alaska State Troopers. *Basey* concluded that state employee disciplinary records are confidential "personnel records" under the State Personnel Act and therefore not subject to disclosure under the Alaska Public Records Act.  Neither *Basey* Norman any other Alaskan case , however, discusses disclosure within the context of discovery within a civil rights litigation.  A public records request is demonstratively different than discovery within a civil rights litigation.

[29] *Id.* Mr. Trejo's reference to this statutory provision is incomprehensible as it falls within the Alaska Employment Security Act; a chapter establishing "a comprehensive program which provides unemployed workers with job placement services and cash benefits during the period of their unemployment. *Department of Labor v. Boucher*, 581 P.2d 660, 1978 Alas. LEXIS 538 (Alaska 1978).  The "Primary purpose of this chapter is to ameliorate the negative effects that involuntary unemployment has on both the unemployed individual and society as a whole. *Id.* Given that purpose and consequent  irrelevance of the Act to the discovery requested herein, any refusal to provide the requested documentation is baseless.

[30] Exhibit 6, attorney Andrew Trejo's email correspondence dated 04/10/2023).

[31] *Id.*

Plaintiffs' Motion to Compel Production
Boston et. al v. Norman et. al.
3:21-cv-00276-SLG
Page 7 of 25

**AST's Response to RFP NO. 4:** *"DPS objects to this request because personnel records, including performance evaluations, are confidential pursuant to AS 39.25.080. Understanding there is a protective order for records of State employees that may satisfy release, the request is nonetheless overbroad as to time and scope and not reasonably calculated to lead to the discovery of admissible evidence. Objection as to relevance as the requested timeframe is not directly related to the underlying claims."*

**RFP NO. 5:** "Please produce copies of all complaints, whether filed with the Alaska State Troopers' independent review office, internal affairs, in both criminal and civil actions, in any personnel action, or by any State of Alaska citizen or employee, against defendants Norman and Somerville during their employment with the Alaska State Troopers [AST] and any other law enforcement or military agency during the preceding seven [7] years. This request specifically includes all documents which have been purged from AST files."

**AST's Response to RFP NO. 5:** *"Please see response to Request for Production No. 4."*

**RFP NO. 6:** "Please produce copies of all AST internal affairs files, including un-redacted copies of each and every document relating to any investigation and findings made against defendants Norman and Somerville by any entity or individual for any type of misconduct, and copies of all documents relating to any disciplinary action taken or implemented against such defendants within the immediately preceding seven [7] years. This request specifically includes all documents which have been purged from AST files."

**AST's Response to RFP NO. 6:** *"Please see response to Request for Production No. 4."*

**RFP NO. 9:** "Please produce copies of all confidential, internal or intelligence documents compiled regarding defendants Norman and Somerville during their AST employment including any documents which have been purged from AST files. The same shall include any and all documentation obtained and at any time held by AST's oversight commission, Internal Affairs, and Internal Review bodies for the preceding seven [7] years."

AST's Response to RFP NO. 9: *"Please see response to Request for Production No. 4."*

RFP NO. 16: "Please produce all records of any disciplinary actions taken against defendants Norman and Somerville by all law enforcement employers throughout their careers, whether in law enforcement or others, and involving or alleging excessive force, false arrest, false imprisonment, assault, battery, and forcible use of drugs on arrested persons."

AST's Response to RFP NO. 16: *"Please see response to Request for Production No. 4."*

## PLAINTIFF'S CONTENTIONS

AST's objections to the quoted RFPs are improper and unfounded for various reasons, among them:

### 1. AST Failed to Produce a Proper Privilege Log

Globally applicable to AST's refusal to respond to RFP Nos. 4, 5, 6, 9, and 16, the Bostons note that AST has failed to serve a proper privilege log in response to production requests, leaving them to guess as to the identity of the documents withheld, their location, a summary of their content, the author of, or repository within which the withheld documents might be found. Parties withholding documents claimed to be "privileged" must identify and describe the documents in sufficient detail to enable the demanding party "to assess the applicability of the privilege or protection."[32] Providing a "privilege log" has become "an almost universal method of asserting a privilege under the Federal Rules."[33] AST must be commanded to produce, at a minimum, a privilege log sufficiently identifying every document withheld.

---

[32] *See* Fed. R. Civ. P. 26(b)(5); and *see* Fed. R. Civ. P. 45(d)(2)(A) (applicable to documents withheld under subpoena); *Ramirez v. County of Los Angeles*, 231 FRD 407, 410 (C.D. Cal. 2005)—failure to provide sufficient information may constitute waiver of privilege.

[33] *Caudle v. District of Columbia*, 263 FRD 29, 35 (D DC 2009); *Novelty, Inc. v. Mountain View Marketing, Inc.*, 265 FRD 370, 380–381 (SD IN 2009).

Plaintiffs' Motion to Compel Production
Boston et. al v. Norman et. al.
3:21-cv-00276-SLG
Page 9 of 25

## 2. AST Failed to Timely Respond to Plaintiffs' RFPs.

AST did not timely respond to the RFPs. Failing to respond to a Rule 34 request within the time permitted waives all objections thereto—including claims of privilege and work product.[34] The discovery requests were served on September 26, 2022. A Rule 26(f) conference was held on December 15, 2022. AST's responses were due 30 days after the conference. Accordingly, AST's responses were due January 15, 2023. AST's responses arrived, however, on February 23, 2023. Accordingly, AST's responses were untimely. AST's objections to production should be waived and it should be ordered to provide all responsive documentation.

## 3. The Requested Documents Are Discoverable

The requested materials are relevant and material to the Bostons' claims and are within AST's possession, care, custody, or control. AST makes no claim that the documents are in any sense privileged; only that the disputed requests "relate to the Personnel records of Troopers Norman and Somerville."[35] The assertions of confidentiality, without more, are not cause to prevent disclosure.

Pursuant to Federal Rule of Civil Procedure 26(b)(1), parties may discover any unprivileged information that is relevant to any party's claim or defense and proportional to the needs of the case.[36] Pretrial discovery is "accorded a broad and liberal treatment."[37] The Federal Rules of Civil Procedure favor broad pre-trial discovery.[38] Courts have broad

---

[34] See *Richmark Corp. v. Timber Falling Consultants*, 959 F2d 1468, 1473 (9th Cir. 1992) (holding that "failure to object to discovery requests within the time required constitutes a waiver of any objection").

[35] *See* Exhibit 6.

[36] Fed. R. Civ. P. 26(b)(1).

[37] Rule 26(f).

[38] *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993).

discretion to control discovery.[39] If no claim of privilege applies, parties may obtain discovery of any information that is "relevant to any party's claim or defense[.]"[40]

"Relevant information for purposes of discovery is information 'reasonably calculated to lead to the discovery of admissible evidence.'"[41] This broad right of discovery is based on the general principle that litigants have a right to "every man's evidence,"[42] and that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth. Thus, the scope of discovery under the Federal Rules of Civil Procedure is "extremely broad."[43] The question of relevancy should be construed liberally and "discovery should be allowed unless the information has no conceivable bearing on the case."

Discovery may be limited, however, where its "burden or expense . . . outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."[44] While the Federal Rules strongly encourage parties to resolve discovery disputes privately and discourage them from seeking needless court intervention, it is obvious that AST has specifically forced the need for such involvement.

Here, AST has not asserted any privilege that would shield the requested materials. In the absence of a recognized privilege, the requested items must be produced because they have the potential to reveal relevant evidence and thereby shed light on the facts of the incident. Presumptively, the production will include governmental policies and procedures

---

[39] *See Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 833 (9th Cir. 2011).

[40] Fed. R. Civ. P. 26(b)(1).

[41] *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 635 (9th Cir. 2005) (quoting *Brown Bag Software v. Symantec Corp.,* 960 F.2d 1465, 1470 (9th Cir. 1992)). Rule 26(f); *See* Fed. R. Civ. P. 26(b)(1).

[42] *United States v. Bryan*, 339 U.S. 323, 331 (1950).

[43] *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995).

[44] Fed. R. Civ. P. 26(b)(2)(C)(iii).

within the scope of a civil rights action such as this. Production should include Norman and Somerville's training, disciplinary, and citizen complaint, records. Jordan's criminal prosecution included demands for restitution for injuries allegedly suffered by Norman. Norman's medical records and all of the literature, emails, and correspondence, between Norman, his doctors, supervisors, insurance carriers, and with the responsible attorneys within the Attorney Generals and District Attorney's offices and personnel should be produced.

It is inconceivable that an extraordinary abundance of inter-departmental and inter-agency communications, materials, email, correspondence, and related memoranda was not created and actively circulated among and between Norman, Somerville, AST, the Attorney Generals and District Attorney's offices, and insurance carriers within the context of Jordan's criminal prosecution and thereafter – none of which are subject to any recognized discovery-proof privilege.[45] Despite the obvious relevance of such materials and their potential to reveal equally relevant and admissible evidence to the case at hand, AST has produced *nothing* along these lines. Mr. Trejo's blanket "confidentiality" excuse is unworthy on its face.

The Bostons' production requests are not *overbroad in time or scope*. Neither do they seek overburdensome or irrelevant materials. The requested production is fundamental to the establishment of the Bostons' case as it pertains to the defendants' legal duties to obey the law,[46] oversee and supervise the hiring, training, conduct, discipline, and employment of all AST personnel; persons who will act under the color of law within the course, scope,

---

[45] It is worth reminding that AST's counsel has not suggested any privilege as cause to preclude discovery.

[46] As law enforcement officers, Norman and Somerville are presumptively aware of and burdened with the duty to protect and serve the public interest by, among other things, honoring and protecting Alaska's citizens', Jordan included, constitutionally protected civil rights. They are further commanded to protect the citizenry from criminal abuse and *not* to be the cause of it.

Plaintiffs' Motion to Compel Production
Boston et. al v. Norman et. al.
3:21-cv-00276-SLG
Page 12 of 25

and in furtherance of their duties as AST officers, with the complete authority and ratification of his principal.[47]

The Bostons believe that the requested materials will show that Norman and Somerville's confrontation, assault, battery, arrest, and all subsequent actions were clearly unlawful, excessive, unreasonable, and in violation of the Bostons' constitutional rights in the absence of probable cause. Accordingly, the requested documents are reasonably calculated to lead to the discovery of admissible evidence and must be produced.

AST's objection, that the documents are "*not reasonably calculated to lead to admissible evidence*" is plainly improper in light of the facts of this case and the Bostons' causes of action related to government misconduct, as well as the Fed. R. Civ. P. To illustrate, the requested records may or may not lead to admissible evidence in support of any party's claim or defense. Fed. R. Civ. P. 26(b) states in pertinent part:

> "(b) Discovery Scope and Limits.
>
> (1) *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

In this case, employment records, complaints, internal files/investigative findings, disciplinary actions, internal affairs investigations, internal/or intelligence documents

---

[47] See, e.g., *Montiel v. City of Los Angeles*, 2 F.3d 335, 342-43 (9th Cir. 1993) (government agency's internal investigation into incident used at trial to establish liability); *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (government agency's investigation into plaintiffs' complaint used to establish liability).

complied and in any sense concerning defendants Norman and Somerville both preceding and throughout their AST employment are inescapably relevant and discoverable. Disciplinary actions involving and internal investigations of Norman and Somerville must not be considered privileged under AS 39.25.080.[48] Rather, they are discoverable under the Federal common law and within the parameters of the Court's January 31, 2023, Protective Order. They are highly relevant to the conduct of the troopers in question, as well as AST's ratification or disciplinary action of previous misconduct of the officers. The importance of the discovery should be clear for these reasons and considering the causes of action raised in the Bostons' Complaint.

Norman and Somerville's performance records reflecting any issues with conducting arrests of the sort at issue are relevant to the official-capacity claim. The Bostons' official capacity claim is based on a theory that AST failed to adequately train and supervise Norman and Somerville which ultimately deprived Jordan of his Fourth and Fourteenth Amendment due process rights.

To state an official-capacity claim pursuant to Section 1983 based on a failure-to-train or failure-to-supervise theory, the Bostons must show that AST disregarded a known or obvious risk that a training deficiency would cause its employees to violate a citizen's constitutional rights.[49] Records related to Norman and Somerville's performance while

---

[48] A.S. 39.25.080, delineates categories of personnel information that are/"are not open to public inspection…" The statute is not even remotely applicable to the production of employment records within the context of a civil litigation where the employee's misconduct represents the very foundation of the cause of action against the employee. The statute neglects any suggestion that such records may not be disclosed within the course of civil court proceedings. Clearly, the statute was designed only to limit "the public's" access. The statute cannot be interpreted as AST's counsel suggests.

AST cannot withhold the personnel records of Norman and Somerville bearing upon their conduct within this case any more than the plaintiff in a vehicle collision can withhold his medical records evidencing his injuries from the defendant seeking their production and to assess the measure of the damages claimed.

[49] *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011) (failure to train); *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014) (failure to supervise).

Plaintiffs' Motion to Compel Production
Boston et. al v. Norman et. al.
3:21-cv-00276-SLG
Page 14 of 25

conducting their duties [when arresting persons generally and when arresting without probable cause] would certainly be relevant to proving whether AST was on notice of any deficiencies and whether it responded appropriately by providing the proper supervision and training to correct such potential issues. The Court should order the requested production for all employment years preceding the incident.[50]

The Bostons seek production of Norman and Somerville's disciplinary records and complaints of misconduct that relate to the use of excessive force, racially motivated mistreatment, knowledge of and ability to recognize and deal with developmentally and/or psychologically challenged persons, dishonesty and investigatory misconduct in a criminal investigation. For the same reasons above, such evidence is certainly relevant to proving whether AST was on notice of any disciplinary deficiencies and whether it responded appropriately by providing the proper hiring, initial and continuing training, supervision, and discipline to prevent or correct such potential issues. The Court should the defendants to product the requested production for all years preceding the incident.

Similarly, the Bostons believe that Norman and Somerville's hiring records must be produced. These records are relevant to proving the Bostons' official capacity claim. The records will show the trooper's experience, qualifications, training backgrounds, past incidents of misconduct, and fitness to serve when they were hired. The Bostons believe that if these troopers had prior issues with or lacked credentials to conduct criminal investigations, and arrests, and/or lacked sufficient knowledge regarding constitutional law and a suspect's rights thereunder, this would be relevant to contextualize AST's response to these issues. [51]

---

[50] *See Nguyen v. City of Garden Grove, No. 8:21-01775 JVS (ADS), 2022 U.S. Dist. LEXIS 192067, at *5 (C.D. Cal. Oct. 20, 2022)*

[51] *Id.*

Plaintiffs' Motion to Compel Production
Boston et. al v. Norman et. al.
3:21-cv-00276-SLG
Page 15 of 25

The Bostons move to compel the production of Norman and Somerville's training records. These documents are relevant to the Bostons' official-capacity claim to understand the training AST provided to these officers to ensure they comply with constitutional standards. The Bostons seek Norman and Somerville's training records pertaining to criminal arrests, investigations, and techniques and procedures for conducting such activities. These records are relevant to prove the official-capacity claim based on the belief that AST failed to adequately train these troopers.[52] Where the Bostons seek to hold AST liable based on the theory that it failed to adequately train these troopers, such records would certainly be relevant to proving both that AST failed to adequately train the troopers in how to conduct an arrest that passes constitutional muster and to show AST's knowledge of these policies or customs. [53]

Mr. Trejo's asserted privacy right in Norman and Somerville's personnel files, while not insignificant, is not boundless. While district courts "generally should give some weight to privacy rights that are protected by state constitutions or state statutes,"[54] "these privacy interests must be balanced against the great weight afforded to federal law in civil rights cases against police departments,"[55] "In cases involving section 1983 claims, courts have repeatedly held that police personnel files and documents are relevant and discoverable."[56]

The Bostons' need to obtain relevant discovery supporting their civil rights claims, outweighs the trooper's privacy interest in their personnel file to the extent the files contain records referencing past alleged use of excessive force, racially motivated misconduct, poor

---

[52] *Seung v. Beardmore*, No. CV 15-6663-JAK (AGRx), 2019 WL 8886025, at *1 (C.D. Cal. Dec. 2, 2019).

[53] *Id.*

[54] *Kelly v. City of San Jose*, 114 F.R.D. 653 at 656 (N.D. Cal. 1987).

[55] *Soto v. City of Concord,* 162 F.R.D. 603, 616 (N.D. Cal. 1995).

[56] *Green v. Baca*, 226 F.R.D. 624, 644 (C.D. Cal. 2005); *Carter v. City of Carlsbad*, No. 10cv1072-IEG (BLM), 2011 U.S. Dist. LEXIS 14921, at *9 (S.D. Cal. Feb. 15, 2011)

training, and would further bear upon their credibility or truthfulness. These topics are relevant to the Bostons' excessive force claims and probative of whether Norman and Somerville were properly trained and supervised.[57] In light of the Bostons' prayer for punitive damages, the discovery likewise may show whether Norman and Somerville had malicious intent.[58] The information also likely would not be available to the Bostons from any other source.[59] What, if any privacy concerns Norman and Somerville may have can be accommodated by producing the information subject to the protective order previously entered in this case. The Court should order AST to disclose, on or before May 22, 2023, any records in its possession concerning Norman and Somerville's records as outlined above.

AST has not denied that the documentation requested within RFPs Nos. 4, 5, 6, 9, and 16 are within its possession, care, custody, and control. There is no alternative method for the Bostons to discover the records. If AST feels that the employment records are inadmissible, AST should raise such objections at the appropriate time, not during the discovery process, as clearly stated in under Fed. R. Civ. P. 26 (b), and in conjunction with the Court's January 31, 2023, Protective Order.

Finally, the 2000 Amendments to the Fed. R. Civ. P. state in pertinent part:

The former provision for discovery of relevant but inadmissible information that appears "reasonably calculated to lead to the discovery of admissible evidence" is also deleted. The phrase has been used by some, incorrectly, to define the scope of discovery. As the Committee Note to the 2000 amendments observed, use of the "reasonably calculated" phrase to define the scope of discovery "might swallow any other limitation on the scope of

---

[57] Fed. R. Civ. P. 26(b)(1).

[58] See *Hampton v. City of San Diego*, 147 F.R.D. 227, 229 (S.D. Cal. 1993), (finding information regarding other instances of misconduct relevant to the punitive damages claim because it "may lead to evidence of a continuing course of conduct reflecting malicious intent").

[59] See *Randolph v. City of East Palo Alto*, 2007 U.S. Dist. LEXIS 89249, 2007 WL 4170093, at *3 (N.D. Cal. Nov. 20, 2007); *Stewart v. City of San Diego*, 2010 U.S. Dist. LEXIS 128539, 2010 WL 4909630, at *3 (S.D. Cal. 2010).

discovery." The 2000 amendments sought to prevent such misuse by adding the word "Relevant" at the beginning of the sentence, making clear that "'relevant' means within the scope of discovery as defined in this subdivision . . . ." The "reasonably calculated" phrase has continued to create problems, however, and is removed by these amendments. It is replaced by the direct statement that "Information within this scope of discovery need not be admissible in evidence to be discoverable." Discovery of non-privileged information not admissible in evidence remains available so long as it is otherwise within the scope of discovery."

The items requested in RFP Nos. 4, 5, 6, 9, and 16 most certainly fall within the scope of discovery in this case. A claim of records confidentiality, without more, will not shield the requested documents from discovery.

### 4. The Official-Information Privilege Does Not Apply.

On behalf of Norman, Somerville, and AST, Mr. Trejo cites AS 39.25.80 and AS 23.20.110 as causes to refuse RFPs 4, 5, 6, 9, and 16. Without saying so, Mr. Trejo appears to be claiming either the existence of an official/departmental privilege precluding production or a form of discovery shield based upon state confidentiality statutes. However, this case was brought under a federal statute, 42 U.S.C. § 1983; enacted "to vindicate federal rights against deprivation by persons acting under color of state law."[60]

Under federal law, "[t]he party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question."[61] In cases that involve adjudication of federal rights, the federal common law governs on issues of privilege, not state law.[62] Accordingly, the state privileges/confidentiality shields raised by Mr. Trejo do not control and may not govern the discovery issues at hand.

---

[60] *Youngblood v. Gates*, 112 F.R.D. 342, 344 (C.D. Cal. 1985.)

[61] *Tornay v. United States*, 840 f.2d 1424, 1426 (9th Cir. 1988).

[62] *United States v. Zolin*, 491 U.S. 554, 562 (1989); *Kelly v. City of San Jose*, 114 F.R.D. 653, 655 (N.D. Cal. 1987); *Miller v. Pancucci*, 141 F.R.D. 292, 297 (C.D. Cal. 1992); Fed. R. Evid. 501.

Similarly, AST also failed to properly invoke the official-information privilege. The governmental party resisting discovery must identify the documents in a privilege log and provide a declaration: (1) affirming that the agency has maintained the confidentiality of the information; (2) stating that the custodian has reviewed the requested information; (3) providing a specific identification of the governmental or privacy interest; and (5) setting forth a projection of how much harm would be done to the threatened interests if disclosure were made;[63] a *Kelly*-declaration. If a defendant's submission is sufficient to meet these threshold criteria, then an *in camera* inspection of the documents may occur.[64] If not, no balancing test will be applied, disclosure will be ordered and no *in camera* inspection will occur.[65] Here, AST did not provide the requisite privilege log or a *Kelly*-compliant declaration to make the "substantial threshold showing" as required.[66] Accordingly, the Court should disregard AST's objections, ignore Mr. Trejo's justifications, and order that all documents responsive to the Bostons' requests be produced forthwith.

Further, because this Court has already issued a Protective Order[67] to "govern the use and disclosure of confidential material produced by the United States of America" whose breadth could be easily construed [or broadened] to include the debated records, there seems little justification for withholding the requested materials. The *Protective Order* defines confidential materials to include following documents, information, and tangible things:

> … (1) medical records and medical information, (2) personnel and employment-related records of any current or former state or federal government employees, (3) tax records, and (4) any other records whose release without a court order would potentially violate the Privacy Act, 5 U.S.C. §

---

[63] *Kelly*, 141 F.R.D. at 670; *Miller*, 141 F.R.D. at 300.

[64] *Miller*, 141 F.R.D. at 301.

[65] *Id.* ; *Ramirez*, 231 F.R.D. at 411.

[66] *Kelly*, 114 F.R.D. at 669 and *Miller*, 141 F.R.D. at 300.

[67] *See* Protective Order dated 31 January 2023; 3:21-cv-00276-SLG Document 56.

Plaintiffs' Motion to Compel Production
Boston et. al v. Norman et. al.
3:21-cv-00276-SLG
Page 19 of 25

552a, HIPAA's Privacy Rules, 45 C.F.R. §§ 160, 164, or other state or federal law.[68]

    2.      These confidential materials shall be disclosed only to:
          a.  The parties, their counsel, and the Court;
       …

    3.      a.      Each personal shall first be advised by the party making the disclosure that pursuant to this Protective Order, the person may not divulge the confidential materials to any other person, except in the preparation of the case or during trial of this action, and that disclosure in the preparation of the case is limited to persons entitled to knowledge of confidential materials under this order."
       …

    4.      No copies of the confidential materials shall be made except by or on behalf of the parties or attorneys of record in this case. These parties may provide copies of the confidential materials to those individuals entitled to have access to them, but those individuals are required to maintain them pursuant to the terms of this Protective Order. Documents shall be identified as confidential by the disclosing party within the scope of this Protective Order by affixing a legend stating "Confidential" on each page of the document that is to be treated as confidential…"[69]

The Bostons have no intention of disclosing production materials beyond the scope of those with a need-to-know and will the confines of this proceeding. If the AST defendants harbor any legitimate concern for extra-judicial disclosures, the Bostons suspect that no party will object to expanding the present Protective Order to encompass the AST defendants as well.

    The point remains, however, that there is no justification for withholding the requested materials; first, because they are not legitimately shielded from discovery within the context of a federal court civil rights litigation and second because their disclosure can be effectively confined within the scope of the present [or amended] protective order. Where

---

[68] *Id.* at p. 1.

[69] *Id.* at p. 1.

a simply protective order can safeguard the materials subject to disclosure, AST may not be heard to object to the production of patently relevant materials.

As for Mr. Trejo's privacy contention, courts may consider privacy interests in resolving discovery disputes, although a party's need for information can overcome a right to privacy.[70] Generally, the disclosure of documents pursuant to a protective order will satisfy confidentially concerns in an excessive force case while providing the plaintiff with the information needed to pursue his or her case.[71] Here, AST did not provide a declaration of any form of protective privilege with their responses and there is no other recognized justification to withhold these documents. A fact compounded by the presence of a protective order which, if utilized, will accommodate any legitimate privacy concerns.

The failure to provide a *Kelly* declaration that addresses the use of a protective order has been held not to satisfy the *Kelly/Miller* threshold requirements.[72] Because AST failed to meet these requirements, its privacy objection should be disregarded, no balancing test need be applied, and the requested information should be produced without further delay.[73] Accordingly, there is no basis for an *in camera* inspection of the requested materials.

*Kelly v. City of San Jose*[74] rejected the application of the deliberative process privilege in civil rights cases against law enforcement officers and municipalities.[75] "The 'deliberative process privilege . . . is at once too narrow and too generous to the government

---

[70] *Edwards v. County of Los Angeles*, 2009 WL 4707996 (C.D. Cal. 2009).

[71] *Kelly*, 114 F.R.D. at 662; *Miller*, 141 F.R.D. at 301.

[72] *Id.*

[73] *Ramirez*, 231 F.R.D. at 410-411.

[74] 114 F.R.D. 653 (N.D. Cal. 1987).

[75] *Id.* at *656.*

for the kinds of cases in issue here."[76]  *Kelly* disapproved of "borrow[ing] concepts... from cases in which litigants sought to discover recommendations, opinions, or ideas and analyses that governmental employees generated as part of the process of developing public policy (where the privilege properly invoked is the 'deliberative process' privilege)" or "the so-called 'self-critical analysis' privilege." [77]

In a society where the government is supposed to be open, where it is supposed to be the servant of and responsive to the people, and where statutes supposedly assure the public access to most information developed by the government,[78] it does not make sense for courts to create a body of privilege doctrine that sweeps so broadly that virtually every datum collected by the government is presumptively shielded from disclosure.  Since privileges derogate the search for the truth they are supposed to be narrowly construed.[79]

The deliberative process privilege afforded to governmental entities is designed to help preserve the vigor and creativity of the process by which government agencies formulate important public policies.[80] "This... is founded on the belief that there are certain governmental processes related to legal and policy decisions which cannot be carried out effectively if they must be carried out under the public eye."[81] "No empirical study supports the contention that the possibility of disclosure would make officers who participate (as respondents or as investigators) in [] investigations less honest..."[82]  In fact, "officers will

---

[76] *Id.*  at 660.

[77] *Id.*  at 656-57, citing *Skibo v. City of New York*, 109 F.R.D. 58, 83, (E.D.N.Y.1985).

[78] See, e.g., Freedom of Information Act, 5. U.S.C. Section 552,

[79] *United States v. Nixon*, 418 U.S. 683, 710 (1974).

[80] *Kelly*, 114 F.R.D. at 658, citing *Branch v. Phillips Petroleum Co*., 638 F.2d 873, 881-82 (5th Cir.1981).

[81] *Branch*, 638 F.2d at 881-882.

[82] *Kelly*, 114 F.R.D. at 664.

feel pressure to be honest and logical when they know that their statements and their work product will be subject to demanding analysis by people with knowledge of the events under investigation and considerable incentive to make sure that the truth comes out (i.e., a civil rights plaintiff and their lawyer). Thus, there is a real possibility that officers working in closed systems will feel less pressure to be honest than officers who know that they may be forced to defend what they say and report."[83]

Moreover, AST's discovery compliance is internally inconsistent. AST did, in fact, produce other "confidential information" [as defined by the Protective Order] which included Norman's medical records alleged to have arisen from injuries sustained in Jordan's unlawful arrest.[84] These few documents were provided without contest or apparent concern for confidentiality. It is curious that AST would freely disclose some of Norman's confidential records, yet refuse to provide others. AST and Mr. Trejo do not explain why some confidential records would be produced while other confidential records would not.

### 5. Plaintiffs' Requests Are Not Vague, Ambiguous, Unduly Burdensome or Overbroad

Objectively viewed, AST's vague objections to discovery are the standard, boilerplate, tripe that has reduced effective discovery to an exercise in litigational combat and a war of attrition that only the wealthiest of litigants can afford. AST's assertion that the Bostons' requests are "vague, ambiguous, and/or overbroad" is without merit. Objections must be made with sufficient specificity in accordance with Rule 34 of the Federal Rules of Civil Procedure. Objections that are not sufficiently specific, such as general statements that requests are vague and ambiguous, are improper.[85] Further, the

---

[83] *Id.* at 665.

[84] These were first freely provided to Jordan in the course of the criminal prosecution as part of the State's discovery obligations. In this matter, the same documents were produced and Bates stamped 000012-000027.

[85] *Ramirez*, 231 F.R.D. at 409.

Plaintiffs' Motion to Compel Production
Boston et. al v. Norman et. al.
3:21-cv-00276-SLG
Page 23 of 25

responding party should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in the discovery documents.[86]  AST does not explain why it finds the RFPs to be overbroad, vague, and/or ambiguous.

An objecting party must state specifically how each question is overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.[87]  AST does not specifically state how each question is overly broad, unduly burdensome, overbroad, or oppressive and submitted no affidavits or offer any evidence revealing the nature of the burden.  Therefore, AST has not properly raised the objection, thereby waiving any right to its assertion.

AST's objections as to "relevance as the requested timeframe are not directly related to the underlying claims" is without merit.  The timeframe of the records sought for the past seven (7) years, including all documents which have been purged from AST files and are related to government policies and procedures within the scope of this civil rights action. The Bostons' discovery requests are not overbroad in time or in scope.  Indeed, they are concisely confined to the term and circumstances of Norman and Somerville's AST employment. Production of the requested materials is fundamental to the Bostons' establishment of their case as it pertains to AST's legal duties to oversee and supervise the hiring, training, re-training, discipline, conduct, and employment of its trooper employees, acting under color of law within the course, scope, and in furtherance of their duties, with the complete authority and ratification of his principal.

## CONCLUSION

For the reasons above, Norman, Somerville, and AST should be ordered to produce the materials sought within RFPs 4, 5, 6, 9, and 16.  Under Rule 37(a)(5), the same

---

[86] *McCoo v. Denny's Inc.,* 192 F.R.D. 675, 694 (D. Kan. 2000).

[87] *Klein v. AIG Trading Group, Inc*., 228 F.R.D. 418, 422 (D. Conn. 2005).

defendants should be ordered to reimburse the Bostons for at least a portion of the attorneys' fees incurred and associated with this motion.

RESPECTFULLY submitted this1st day of May 2023, at Anchorage, Alaska.

AGLIETTI, OFFRET & WOOFTER, LLC

_____
J. E. Wiederholt, ABA # 8312172
Attorneys for Plaintiffs